971 So.2d 1281 (2008)
In the Matter of the ESTATE OF William H. PATTON, Jr., Deceased.
Stacy Fisher, Appellant
v.
Myrtis Dean Patton, Executrix, Appellee.
No. 2006-CA-01637-COA.
Court of Appeals of Mississippi.
January 8, 2008.
*1282 Robin L. Roberts, Hattiesburg, attorney for appellant.
John L. Jeffries, Laurel, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. On June 1, 2006, the Chancery Court of Jones County found Stacy Fisher in contempt for violating a November 21, 2005, court order. Following a hearing on sanctions, the court ordered Fisher to pay $3,045.75 in attorney's fees to Myrtis Patton. Aggrieved, Fisher appeals and asserts the following issues:
I. She was not in contempt because the original order had no deadline.
II. She was held in constructive criminal contempt, not civil contempt.
III. The court found her in constructive criminal contempt without following the proper procedures.
IV. Myrtis Patton should not have received a judgment because she came to court with unclean hands.
V. Any violations of the court order were de minimis.

¶ 2. Finding no error, we affirm.

FACTS
¶ 3. William H. Patton, Jr. died on September 7, 2005. At the time of his death, he and his wife, Myrtis Patton, were separated and were in the process of seeking a divorce. Mr. Patton had left a will that named his wife as executrix. The children of the decedent, Stacy Fisher and William W. Patton, filed a motion to remove Mrs. Patton as executrix of their father's estate.
¶ 4. In the November 21, 2005, court order disposing of the motion, Fisher and her brother were required to inventory and turn over all assets in their possession that belonged to the estate of their recently deceased father, William H. Patton. They were to return any such items to the deceased's wife along with three vehicles that were jointly titled in her name and that of the deceased.
¶ 5. When Fisher failed to comply with the court order, Mrs. Patton filed a motion to compel on February 23, 2006. Fisher, however, remained in noncompliance when the Chancery Court of Jones County found her and her brother in contempt on June 1, 2006. Following the contempt finding, Fisher did file an inventory but only listed the three vehicles and a man's ring.
¶ 6. On August 10, 2006, at a hearing on the issue of sanctions, Mrs. Patton sought an award of $10,000. The court ordered Fisher to pay $3,045.75, which represented the attorney's fees that Mrs. Patton spent to enforce the original order.[1] At the *1283 hearing on sanctions, Fisher also brought with her a bag that contained her father's possessions that she received at the hospital when he died.
¶ 7. Prior to filing the motion to compel, Mrs. Patton traveled to Fisher's Texas residence on January 14, 2006, in an attempt to recover the vehicles. Fisher then had a criminal trespass warning issued against Mrs. Patton because she went to Fisher's home and was making calls to Fisher in the middle of the night. There was also some testimony that the Bankruptcy Court of Arizona had served upon Fisher a motion to compel regarding the vehicles, which was pursuant to Mrs. Patton's pending bankruptcy proceeding.

ISSUES AND ANALYSIS
I. Whether Fisher was held in constructive criminal contempt without a proper hearing or whether she was properly found to be in civil contempt
¶ 8. We will address Fisher's first three issues together as they involve a contempt analysis. In these points of error, Fisher argues that the chancellor found her not to be in civil contempt but in constructive criminal contempt. She then argues that because she was found to be in criminal contempt she was entitled to certain procedural safeguards, which the court did not provide. She also argues that she should not have been found in contempt at all because there was no deadline for compliance with the court order.
¶ 9. We will first look at whether the chancellor found Fisher in criminal or civil contempt. The supreme court has stated the following in regard to contempt:
Generally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than the Supreme Court. Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). When dealing with contempt matters, we must first determine whether the alleged contempt is either civil or criminal in nature. If the contempt is civil, the proper standard utilized for review is the manifest error rule. Id. If the contempt is criminal, then we will proceed ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt. Id. If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. Purvis v. Purvis, 657 So.2d 794, 796 (Miss.1994). The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act. Id. at 796-97. Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order. Common Cause of Miss. v. Smith, 548 So.2d 412, 415-16 (Miss.1989).
In re Williamson, 838 So.2d 226, 237(¶ 29) (Miss.2002).
¶ 10. In Williamson, the supreme court went on to state the following:
Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence *1284 the offensive conduct was committed. . . .
Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court. . . . In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.
Id. at 237(¶ 31) (quoting Moulds v. Bradley, 791 So.2d 220, 224-25 (¶¶ 7-8) (Miss. 2001)).
¶ 11. Following foregoing rules, we do not agree that the finding of contempt against Fisher was constructive criminal contempt. The primary purpose of the contempt order was to enforce the rights of Mrs. Patton to possess the property of her late husband. The contempt order served to enforce compliance with the previous court order compelling Fisher to inventory and turn over the decedent's property.
¶ 12. Further support of the finding that this was not a criminal contempt order but an attempt to enforce Mrs. Patton's rights is the fact that the court did not order Fisher to pay a fine to the court. Fisher was only required to pay Mrs. Patton's attorney's fees that she expended in pursuing this matter. Because we find that the trial court's order was for civil contempt, we do not address Fisher's claim that she was denied the procedural safeguards required for a finding of constructive criminal contempt.
¶ 13. In reviewing a finding of civil contempt, we will not disturb the trial court's findings unless they were manifestly wrong, clearly erroneous, or if the court applied an erroneous legal standard. Riley v. Wiggins, 908 So.2d 893, 897(¶ 7) (Miss.Ct.App.2005).
¶ 14. Fisher had failed to comply with the court order to inventory and turn over all property of the estate for more than three months when Mrs. Patton filed her motion for contempt in February 2006. When the chancellor issued the June 2006 order finding Fisher in contempt it had been almost seven months since the original order, and she had yet to comply with it. It was not until a few days after the court found her in contempt that Fisher filed an inventory of the estate property in her possession. Nevertheless, what she filed with the court was not a complete inventory of the assets she possessed. At the August 2006 hearing on the issue of sanctions, she brought with her a number of her father's items that the hospital staff gave to her following the decedent's death, which she did not list in the inventory.
¶ 15. Ultimately, the contempt order was an attempt by the court to enforce its earlier order and to enforce Mrs. Patton's right to receive the property of her deceased husband's estate. We do not find it was error for the chancellor to enter a contempt order when Fisher failed to comply with the court order to compel for over eight months. We find that the chancellor properly found Fisher to be in civil contempt and ordered her to pay Mrs. Patton's attorney's fees. This issue is without merit.
II. Whether Mrs. Patton approached the court with unclean hands
¶ 16. Fisher next claims that the chancellor erred in granting relief to Mrs. Patton because Mrs. Patton approached the court with unclean hands. Fisher argues that Mrs. Patton's trip to Fisher's home in Texas, which included a late-night phone call causing Mrs. Patton to be warned for trespassing, should preclude her from enforcing the original court order.
*1285 ¶ 17. While Mrs. Patton's attempt to recover the property that Fisher had been ordered to turn over was unorthodox and certainly unwelcome by Fisher, we fail to see how her actions should preclude Mrs. Patton from subsequently pursuing her claim in court. Other than cases setting forth the general principles of the unclean hands doctrine, Fisher cites no authority supporting her claim that Mrs. Patton should be prohibited from pursuing her claim.
¶ 18. The supreme court said the following about the doctrine of unclean hands:
Courts apply the maxim requiring "clean hands" only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.
Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1391 (Miss.1997) (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933)). While the complained of actions of Mrs. Patton were directed at the property that was at issue, her actions were not so unconscionable and had no effect whatsoever upon the property. Accordingly, we do not find that this was a case in which the unclean hands doctrine should have been applied. This issue is without merit.
III. Whether violations of the order were de minimis
¶ 19. In her last point of error, Fisher invokes the principle of de minimis non curat lex. She argues that, according to this principle, the interest sacrificed in this case is too great for such a small consideration. According to Fisher, her father's items that she possessed were de minimis in comparison to the punitive sanctions that the court levied against her.
¶ 20. In making her argument, Fisher overemphasizes the sanctions against her and undervalues the offenses that led to those sanctions. Firstly, the sanctions were not punitive as Fisher alleges but compensatory. Mrs. Patton initially sought $10,000 to cover her attorney's fees and other expenses she incurred in attempting to secure the estate property. The judge only awarded her $3,043.75 for attorney's fees. Furthermore, in support of her argument, Fisher only lists her father's items she received from the hospital and labels them de minimis without mentioning the ring and the three cars that were also in her possession. We do not find any merit to this argument.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The order imposing sanctions found that William W. Patton never had any assets of the estate in his possession, so no sanctions were granted against him.