# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00241-SCT

*STEPHANIE TYNER PIERCE*

*v.*

*HERITAGE PROPERTIES, INC., AMERICAN FAN RETAIL ASSOCIATES, INC., AND HALSEY ENTERPRISES COMPANY, LTD.*

| | |
|---|---|
| DATE OF JUDGMENT: | 2-12-93 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NATIE CARRAWAY |
| | JOHN D. PRICE |
| ATTORNEYS FOR APPELLEES: | ROBERT C. BOYD |
| | WILLIAM A. PATTERSON |
| | GARY K. SILBERMAN |
| | JOHN P. SNEED |
| | JOSEPH A. ZIEMIANSKI |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 2/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/20/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This is an appeal of an order of the Circuit Court of Hinds County dismissing Stephanie Tyner Pierce's lawsuit against Heritage Properties, Inc. (Heritage), American Fan Retail Associates, Inc. (American), and Halsey Enterprises Company, Ltd. (Halsey). After an eight-day trial, a jury returned a verdict in the amount of $500,000 for Pierce against the appellees. However, the trial court overturned the jury verdict based on improper closing argument by Pierce's counsel. The court ordered a new trial, but during discovery, it was revealed that Pierce had given false testimony and withheld information. As a result, the trial court dismissed Pierce's cause of action with prejudice.

¶2. Pierce objected, claiming that the court abused its discretion in dismissing her case with prejudice. The defendants/appellees maintained that Pierce's presentation of false testimony under oath was sufficient to justify a dismissal of her case. Because we find that the trial court's sanction against Pierce was warranted to protect the integrity of the judicial process due to Pierce's abuse of the discovery process and presentation of false testimony, we hereby affirm the trial order of dismissal with prejudice.

## FACTS

¶3. The appellant, Stephanie Tyner Pierce, was renting an apartment at Northtown Apartments in Jackson, Mississippi in February of 1987. On February 19, 1987, Pierce was in bed with Read Bush when a ceiling fan located above her bed fell onto Pierce from the place where it had been installed in the ceiling, causing her personal injuries.

¶4. Pierce sued several defendants, including Heritage, American, and Halsey, under theories of negligence, breach of warranty, and strict liability. After an eight-day trial in September 1991, a jury returned a verdict in favor of Pierce against Heritage, American, and Halsey, in the amount of $500,000 for personal injury, primarily a knee injury, and dismissed the other defendants, Stuart C. Irby Company, Heritage Construction Company, Inc. and Milner Electric Company, Inc. The remaining three defendants filed motions for judgment notwithstanding the verdict, and motions for a new trial, based on charges of improper closing argument and racially motivated jury selection by Pierce's counsel. On December 3, 1991, the trial court vacated the original judgment and granted a new trial based on improper and prejudicial closing argument by Pierce's counsel.

¶5. During the discovery of the cause *sub judice*, and at the first trial, Pierce maintained, under oath, that she was in the apartment alone when the accident occurred. Sworn answers to interrogatories reveal that Pierce asserted that there was no other eyewitness to this accident, because no one was in the apartment with her. She reiterated this several times over a five-year period in various responses to interrogatories, in deposition testimony, and at trial.

¶6. To the contrary, the defendants discovered after the first trial that the plaintiff was not alone when the accident occurred. After the jury verdict was rendered, defense counsel received an anonymous telephone call stating that the plaintiff was not alone on the evening of the accident. Two weeks after the trial court granted a new trial, and knowing that the defendants were aware that the plaintiff had perjured herself, plaintiff's counsel sent a letter to the defense, stating that Pierce was now identifying Read Bush as a witness to the accident. Bush's deposition was taken, and he confirmed his presence that night, making him a material fact witness. However, prior to this identification, Bush was never identified or brought to the attention of defense counsel or the court.

¶7. American and Heritage filed motions for dismissal. Halsey also moved for dismissal or, in the alternative, monetary sanctions. Pierce responded by acknowledging that she gave false testimony. However, she stated in a second deposition that her purpose in not telling the court about Bush earlier was not to deceive the trial court. Instead, Pierce insisted that she did not want her parents to know that she had a male companion in her apartment at night.

¶8. The trial court reviewed the arguments, motions, and memoranda of counsel and concluded that Pierce's intentional presentation of false testimony warranted the sanction of dismissal with prejudice,

with costs assessed to Pierce.

## DISCUSSION

¶9. Pierce contends that the circuit court erred and abused its discretion by imposing the sanction of dismissal with prejudice, thereby barring her from any recovery for injuries caused when the ceiling fan fell on her. Specifically, the appellant argues that the trial court misapplied Mississippi Rule of Civil Procedure 37(b)(2) by imposing the "death penalty" and dismissing her lawsuit.

¶10. The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. *White v. White*, 509 So.2d 205, 207 (Miss. 1987). The provisions for imposing sanctions are designed to give the court great latitude. *Id.* at 207. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. *Palmer v. Biloxi Regional Medical Center*, 564 So.2d 1346, 1367 (Miss. 1990). Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances. *Hapgood v. Biloxi Regional Medical Center*, 540 So.2d 630, 634 (Miss. 1989); *White*, So.2d at 209.

¶11. Such dismissals by the trial court are reviewed under an abuse of discretion standard. *Palmer*, 564 So.2d at 1368. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. *Burkett v. Burkett*, 537 So.2d 443, 446 (Miss. 1989). If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones which could have been made. *Id.* This Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Cooper v. State Farm Fire & Cas. Co.*, 568 So.2d 687, 692 (Miss. 1990).

¶12. The trial court, in dismissing Pierce's case, relied on Mississippi Rules of Civil Procedure 37(b)(2) and 37(e), along with its inherent power to protect the integrity of the judicial process. In summary, these rules give the trial court the power to impose just and appropriate sanctions for failure to comply with an order to provide or permit discovery.

¶13. The United States Supreme Court held in *National Hockey League* that when reviewing a dismissal by the district court, the Court's duty is to decide not whether it would have dismissed the action as an original matter, but whether the district court abused its discretion in so doing. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976). In the underlying case for *National Hockey League*, the Third Circuit Court of Appeals relied upon several extenuating factors to reverse the district court's dismissal, including: (1) none of the parties had really pressed discovery until approximately one year after the commencement of the action; (2) the plaintiff's counsel took over the litigation after a consent decree was entered and had difficulty in obtaining some of the requested information; and (3) plaintiff's lead counsel had assured the district court that he would not knowingly and wilfully disregard the final deadline. *National Hockey League*, 427 U.S. at 641. The U. S. Supreme Court, in reversing the Third Circuit, held that these sorts of considerations, while important to evaluate and weigh in consideration of sanctions like dismissal, "cannot be allowed to wholly supplant the other and equally necessary considerations embodied" in Rule 37. *Id.*

¶14. "An implicit condition in any order to answer an interrogatory is that the answer be true, responsive and complete. A false answer is in some ways worse than no answer; it misleads and confuses the party." *Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 107 (D. Md. 1989). In *Smith*, the dismissed plaintiff asserted that his ultimate production of the disputed documents dissipated any prejudice to the defendants, while the defendants pointed out that the plaintiff's perjury throughout discovery cast serious doubt on the credibility of the rest of his testimony, both during discovery and at trial. *Id.* at 105. The district court agreed with the defendants that the focus must be on the intentional nature, as well as the pattern, of the plaintiff's conduct, which included deliberately providing false responses in three discovery mechanisms: the answers to interrogatories, the request for production of documents, and the deposition testimony. *Id.* "Parties, like witnesses, are required to state the truth, the whole truth and nothing but the truth in answering written interrogatories." *Hunter v. International Systems and Controls Corp.*, 56 F.R.D. 617, 631 (W.D. Mo. 1972). Further, the most severe sanctions provided by statute or rule must be available to a trial court in appropriate cases, not just to penalize those whose conduct may warrant such a sanction, but to deter those who might be tempted to engage in such conduct in the absence of a deterrent. *National Hockey League*, 427 U.S. at 643.

¶15. Some federal courts have also interpreted a false response to an interrogatory as a failure to respond under Fed. R. Civ. P. 37(d) and have imposed sanctions, including striking a party's pleadings and imposing judgment. *See*, *e.g*, *Airtex Corp. v. Shelly Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976); *Bell v. Automobile Club of Michigan*, 80 F.R.D. 228, *appeal dismissed*, 601 F.2d 587 (6th Cir.), *cert. denied*, 442 U.S. 918 (1979).

¶16. The Fifth Circuit has applied several considerations to determine whether a district court has abused its discretion under Fed. R. Civ. P. 37(b)(2)(C) by dismissing with prejudice:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Batson v. Neal Spelce Associates*, 765 F.2d 511, 514 (5th Cir. 1985)(citations omitted). Although this Court has adopted this construction, it would be even more illustrative to discuss treatment of similar discovery issues by other jurisdictions.

¶17. For example, the New Mexico Supreme Court has held that a state district court may impose the sanction of dismissal for violation of discovery orders when the failure to comply is due to the wilfulness, bad faith, or fault of the disobedient party. *Medina v. Foundation Reserve Insurance Co.*, 870 P.2d 125, 126 (N.M. 1994). A willful violation of a discovery rule occurs when there is a conscious or intentional failure to comply with the rule's requirements. *Id.* A finding of willfulness may be based upon either a willful, intentional, and bad faith attempt to conceal evidence or a gross indifference to discovery obligations. *Id.* While the severest of sanctions should be reserved for extreme circumstances, the district court does not abuse its discretion by imposing the sanction of

dismissal when a party demonstrates flagrant bad faith and callous disregard for its responsibilities. *Id.*

¶18. In *Medina*, the trial court expressly found that Medina willfully failed to comply with discovery obligations, willfully violated a discovery order, and repeatedly gave false and misleading information. *Medina*, 870 P.2d at 128. The court noted that, " It would be ridiculous to allow a party who completely thwarts discovery to escape penalty simply because it could not be proven that other litigants were in fact deceived by such misconduct or actually relied upon it." *Id.* In addition, the New Mexico Supreme Court declined to recognize a requirement that in order for dismissal to be appropriate, information improperly withheld in discovery must be critical to trial preparation. *Id.*

¶19. The rule is similar in Georgia. When a party has frustrated the orderly judicial process by false or erroneous responses to interrogatories, that party should not be able to argue that its own conduct has removed it beyond the reach of sanctions. *Orkin Exterminating Co. v. McIntosh*, 452 S.E.2d 159, 164 (Ga. Ct. App. 1994). The Georgia Court of Appeals has enunciated its policy behind precluding such actions by a party:

> To condone such conduct would force parties to assume the falsity of every sworn interrogatory response and file endless motions preserving their right to relief. Such a rule would allow the unscrupulous to conceal documents from opposing parties by the simple expedient of denying their existence, without fear of penalty if the deception were by some chance discovered. It would discourage diligence in seeking out relevant documents even on the part of those not actively dishonest. Lack of diligence or negligence would not only be unpunished, it would be rewarded.

*Id. See also* ***Vaughn v. Texas Employment Comm'n***, 792 S.W.2d 139 (Tex. App.--Houston[1st Dist] 1990)(upholding trial court's dismissal in light of employee's continued perjury at trial).

¶20. In this instance, Pierce's failure to comply was a result of willfulness. Pierce consistently obstructed the progress of the litigation by filing admittedly false responses to various discovery requests and by swearing to false testimony in depositions. The circuit court judge found that some of the answers provided by Pierce were "manifestly false." Pierce's conduct constitutes bad faith. In the *Smith* case referred to above, the plaintiff who perjured himself in his deposition and answers to interrogatories only admitted his misconduct when he realized that his lie was about to be uncovered. *Smith*, 124 F.R.D. at 109. In the same way, Pierce only admitted that she had been untruthful in her responses to discovery when she realized that defense knew the truth and confronted her with it.

¶21. The trial court explicitly addressed the potential of issuing less drastic sanctions. The court's order reveals that the court considered allowing cross-examination at trial as an option. The appellant argues that this would be an appropriate sanction because she would be subjected to humiliation. However, the trial court correctly noted that this cross-examination may always occur when a party makes inconsistent statements. The court also considered charging the plaintiff with all costs incurred by the defendants in the action. However, it declined to do so because the fees would probably exceed any damages that might be awarded should the case go to trial again.

¶22. The other sanctions considered by the court would not achieve the deterrent value of the dismissal. Since any other sanction beside dismissal would virtually allow the plaintiff to get away

with lying under oath without a meaningful penalty, the trial court's decision regarding this factor was correct.

¶23. Pierce argues that because the defendants were not subjected to any prejudice, her case should be reinstated. However, there is no requirement that the defendant be substantially prejudiced by the absence of evidence. What is most troublesome in the case *sub judice* is that the neglect is plainly attributable to the client, Stephanie Pierce. Pierce admits that she lied under oath on several occasions, and her counsel had no knowledge of it. Because there is substantial evidence in the record to support her admitted deception, the trial court's dismissal seems wholly appropriate.

¶24. Additionally, Pierce argues that because the defendants do not have "clean hands," they cannot have her claim dismissed for abuse of discovery. Pierce's position is that either the manufacturer or the importer of the ceiling fan in question gave false testimony concerning the design of the fan. Because the defendants will not admit to providing the design specifications for the fan, Pierce believes that the defendants cannot use her "mistake" to relieve themselves of liability.

> Courts apply the maxim requiring "clean hands" only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The *Palmer* case can be distinguished from the case *sub judice*, in that the defendants in *Palmer*, who were themselves guilty of procrastination, sought discovery sanctions against the plaintiff for being dilatory in prosecution of the lawsuit. This Court merely analogized the situation to the clean hands doctrine, which comes up in cases of judicial or equitable estoppel. We actually held that "a defendant's own procrastination becomes relevant only when the plaintiff's procrastination is being characterized (by the defendant) as unacceptable." *Palmer*, 564 So.2d at 1370.

¶25. Here, the defendants' conduct cannot be characterized as "wilful inequity." The defendants have done no unconscionable act in relation to discovery. Since the defendants have done nothing which can be construed as dilatory, the "clean hands" doctrine does not apply in this case.

¶26. We hasten to reiterate our reluctance to uphold the sanction of dismissal (the "death penalty"). However, the instant case provides the paradigm situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony. As we have stated before in a case where an attorney concealed potentially significant facts and evidence,

> We are in agreement that appropriately sanctioning [the attorney] for his clear misconduct in this matter will thereby maintain the integrity of our adversary process and that to conclude otherwise would be to give this Court's seal of approval to a system which places technical accuracy above that which should be the common goal of all its participants-to learn "the truth, the whole truth and nothing but the truth."

***The Mississippi Bar v. Land***, 653 So.2d 899, 910 (Miss. 1994). The same reasoning applies to a client who knowingly gives false testimony under oath and conceals significant facts from the court. Such action by any party should not and will not be tolerated. If a defendant had done the same in this case, the trial court would have been affirmed if it struck the answer and allowed a default judgment to occur. Because the trial court did not abuse its discretion by dismissing Pierce's claim with prejudice, we hereby affirm the trial court's decision.

¶27. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY.**